UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CAROL J. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) Case No: 1:03-cv-1009 |
| | ) |
| v. | ) MDL Case No: 1:03-md-1552 |
| | ) |
| UNUMPROVIDENT CORP., PROVIDENT | ) |
| COMPANIES, INC., | ) Chief U.S. District Judge Curtis L. Collier |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

Before the Court is Defendants UnumProvident Corp. and Provident Companies, Inc. motion for summary judgment (Court File No. 87). Plaintiff Carol J. Taylor ("Plaintiff") has responded (Court File No. 99), and Defendants have replied to Plaintiff's objection (Court File No. 102). For the following reasons, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 87).[1]

## I. FACTS & PROCEDURAL BACKGROUND

### A. Plaintiff's Claim

In 1981 the University of Arkansas entered into a contract with Unum Life Insurance Company of America to supply disability insurance for its employees (Court File No. 23, Ex. A Part

---

[1] This case is one of a number of lawsuits assigned by the Judicial Panel on Multidistrict Litigation to this Court. The Court has provided detailed background information on the cases in previous decisions. See, e.g., *In re UnumProvident Corp. ERISA Benefits Denial Actions*, 245 F.R.D. 317 (E.D. Tenn. 2007); *Taylor v. Unumprovident Corp.*, 2005 WL 3448052 (E.D. Tenn. 2005); *In re Unumprovident Corp. Securities Litigation*, 396 F. Supp. 2d 858 (E.D. Tenn. 2005); *Gee v. UnumProvident Corp.*, 2005 WL 534873 (E.D. Tenn. 2005).

6 at UASP 10001). The University of Arkansas paid the premiums and provided the insurance coverage to its employees free of charge (*id.* at UACL 00022).[2]

Plaintiff started working for the University of Arkansas at Little Rock as a buyer in 1991 (*id.* at UACL 00016). Plaintiff alleges she became disabled and unable to work in 2001, and applied for benefits under her disability policy (*id.* at UACL 00003; Court File No. 23, Ex. A Part 4 at UACL 00138).

On September 19, 2001, UnumProvident denied her claim because it concluded there were no "diagnosis or restrictions/limitations to substantiate [her] inability to work full-time as a Buyer." (*Id.* at UACL 00136). Plaintiff appealed the denial using UnumProvident's internal processes (*id.* at UACL 00142). On September 9, 2002, UnumProvident denied her appeal, concluding she had presented no evidence her impairments actually prevented her from working as a full time buyer (Court File No. 23, Ex. A Part 3 at UACL 00218). On February 3, 2003 UnumProvident denied a second appeal of the decision to deny Plaintiff benefits (*id.* at UACL 00258). Having exhausted UnumProvident's internal procedures, Plaintiff filed this present action.

### B. The Alleged Scheme

One of the mainstays of Defendants' business is its individual disability line of business. (Court File No. 99, Ex. 3 at Ex. G). "The early and mid-1980's were characterized by a highly competitive, growth oriented market environment." (*Id.*) During this period Defendants sold

---

[2]The University offered additional Optional Long Term Disability Coverage to its employees, for which a participating employee would have to pay (*id.*). The record does not clearly indicate whether Plaintiff participated in the optional insurance coverage. There is an application for coverage (Court File No. 23, Ex. A Part 6 at UACL 00023-00022), but her claim form indicates she has no optional coverage and Plaintiff makes no argument indicating she was covered by a personally purchased policy (*id.* at UACL 00016) (lists optional amount as 0).

policies, which they later considered poorly underwritten and underpriced (*id*.). Compared to its competitors, Provident was more aggressive in pricing and Provident[3] accordingly won the battle for market share but was left with a disproportionate number of "poor risks." (*Id*.) Provident and later UnumProvident were saddled with long term non-cancelable underperforming policies (*id*.). "The disability operation [generated] large statutory losses[, and] the existence of the special reserve on the block of business written prior to 1994 create[d] a huge drag on the company's reported [return on equity.]" (*Id*.).

In response to this "crisis atmosphere," Provident consolidated claim payment to its home office in Chattanooga, Tennessee in 1995 (*id.*). In May 1995, an internal Provident memorandum proposed a "significant investment" in order to move "Provident from a claim payment to a claim management approach." (Court File No. 99 part 7). A handwritten note on the memorandum indicates the plan was approved and the company was to act with "a sense of urgency" (*id*.). Plaintiff alleges this scheme is the basis of her cause of action (Court File No. 99 at 3).

The complaint alleges Defendants "routinely denied legitimate claims . . . in an effort to maximize [their profits]." (Complaint ¶ 29). Plaintiff contends Defendants denied legitimate claims through various methods, often pressuring claims officers and in-house doctors to deny claims (Complaint at ¶¶ 29(a)-29(i)).

According to Plaintiff, Defendants centralized all claims handling operations in Chattanooga to enable Defendants' senior management to have control over claims adjudication (Court File No. 99 at 3). According to the affidavit of Linda Nee, she "observed numerous claims handling procedures that were instituted and practiced to maximize UNUM's profits without regard to

---

[3]Provident merged with Unum to create UnumProvident.

-3-

UNUM's obligations to legally and fairly evaluate claims submitted by persons insured under UNUM's individual disability insurance contracts."[4] (Court File No. 99, Ex. 7 at ¶ 12). In discussing weekly roundtable meetings one witness explained:

> [T]here was a great amount of pressure to make sure before going into those meetings that your numbers were – your termination numbers were strong because if they weren't, not only did you have to explain why they weren't to Mr. Arnold, but it had to be explained to each one of Ralph's senior team, and they would question us as to what actions we were going to take to again improve performance, which translated into [sic] increase the number of terminations.

(Court File No. 99, Ex. 6 at Ex. G, at 1658).

### C. Procedural Background

After Defendants removed the case from a state court to the United States District Court for the Western District of Tennessee, the Judicial Panel on Multi-district Litigation transferred the case to this Court.

Plaintiff brought this action alleging Defendants' conduct constituted breach of contract, a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 to 47-18-128 ("TCPA"), fraudulent inducement, negligent misrepresentation, and breach of fiduciary duty. She also filed a claim for assumpsit or money had and received.

In addressing this summary judgment motion, the Court previously dismissed a number of

---

[4] Defendants move to strike the affidavit because "the whole affidavit was based on rank hearsay, was not based on personal knowledge, and was entirely speculative." (Court File No. 101). But from the affidavit it is clear the affiant is offering both an expert opinion and some fact evidence from her experience in working for Unum. Since Defendants have not objected to the affiant's qualifications or the subject matter of her opinion, except that it includes hearsay this is not an objection the Court will resolve at this time. In any event, it is clear the cited portion is from the affiant's personal experience working for Unum. The Court does note the majority of evidence that accuses Defendants of a conspiracy to wrongfully deny benefits relates to Provident and not Unum. This affidavit is the exception, as Linda Nee accuses Unum of engaging in similar activities from 1996 to 2002.

defendants who had no contractual relationship with Plaintiff. The Court also granted summary judgment for Unum and Provident with respect to punitive damages and equitable relief for breach of contract (Court File No. 124). The Court reserved ruling on the other issues raised in Defendants' motion. The Court will now consider the remaining issues, Plaintiff's claims of fraudulent inducement and negligent misrepresentation. In addition, the Court will address a motion to intervene as of right or permissively by several plaintiffs, which may or may not be pending.

The Court recently denied Plaintiff's motion to certify a class in this matter (Court File No. 145).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323. The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224

F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

Defendants argue Plaintiff has no evidence to support her claims for negligent misrepresentation and fraudulent inducement (Court File No. 87 at 7-9). Plaintiff argues, "Defendants knew when they sold Plaintiff her policy that they had no intention of investigating and paying out Plaintiff's claim in good faith; in fact Defendants had a complex system in place to avoid doing just that." (Court File No. 99 at 14).

Not only does the record lack support for Plaintiff's conclusion, it positively refutes this theory. By her own theory, Plaintiff does not have a claim for fraudulent inducement. Accepting Plaintiff's allegations as true, Provident and Unum engaged in a pattern and practice to wrongfully deny meritorious claims in the mid 1990's. Plaintiff provides no justification for how Unum fraudulently induced her to enter into a contract the University of Arkansas provided her free of charge as an employment benefit in 1991.

Plaintiff is an intended third party beneficiary of the contract, and so she can sue to recover on any breach of the contract, but this does not explain how Unum could have known in 1991 (or 1981 when the group policy was first established) that it would begin to improperly deny claims five

(or 15) years later.

Under either Arkansas or Tennessee law "for a fraudulent misrepresentation to be actionable, it must consist of a statement of an existing or past material fact, made with knowledge of its falsity or with reckless disregard of the truth." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498-99 (Tenn. 1978); *Southeastern Distributing Co. v. Miller Brewing Co.*, 237 S.W.3d 63, 74 (Ark. 2006). Both states recognize promissory fraud, that is entering into contract with no present intent to perform. *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998); *Pierce v. Sicard*, 3 S.W.2d 337, 339-40 (Ark. 1928). But either theory requires Plaintiff to prove the tortfeasor had no intent to perform the contract when the contract was formed and not at some later date. Plaintiff has provided no evidence or explanation of how in 1991 Unum knew it would engage in tortious behavior in 1996.

The parties agree Arkansas does not recognize claims for negligent misrepresentation. If Plaintiff is correct and Tennessee law applies, Plaintiff still cannot maintain an action for negligent misrepresentation as Plaintiff provides no false statement other than the representation it would honor the contract. To maintain an action for negligent misrepresentation a plaintiff must show, among other things, that the defendant supplied false information for the guidance of others and the plaintiff justifiably relied on the information. *Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004). As Plaintiff's fraud in the inducement theory cannot be correct on its own terms, and Plaintiff identifies no other false statements or any other theory of reliance, Plaintiff has failed to meet her burden on this claim.

**IV.    MOTION TO INTERVENE**

Plaintiffs Carol Jewel, Shirley Hoiland, Mary Patrick, and Robert E Olman ("Jewel Plaintiffs") have moved to intervene either permissively or as of right (Court File No. 112). Plaintiff Carol Jewel at least has withdrawn this motion (Court File No. 136). There is no indication whether the remaining Jewel Plaintiffs concur in this withdrawal.

Intervention as of right is only possible where a party "claims an interest . . . that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Since the Court has denied Plaintiff's motion for class certification there is no longer any issue in this litigation that would as a practical matter dispose of the Jewel Plaintiffs' claims or impair their interests. The only remaining issue is whether the Jewel Plaintiffs may permissively intervene.

"[T]he court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(3).

The Jewel Plaintiffs argue their motion for permissive intervention should be granted because it would "[address] alleged deficiencies in 'adequacy' and 'typicality;' and [increase] the pool of material and intellectual resources available to prosecute her claims." (Court File No. 113).

Defendants argue the Jewel Plaintiffs are merely seeking a second bite at the apple. When Defendants sought to remove the Jewel case to federal court so that it could be transferred here "the Jewel Plaintiffs successfully opposed the removal, arguing, among other things, that Jewel 'has been proceeding separately from other actions currently venued in Tennessee that are part of a

Multidistrict Litigation.'" (Court File No. 116) (citing Jewel Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' expedited Motion to Remand). The Massachusetts Superior Court had already denied their motion for class certification, and only after that denial the Jewel Plaintiff's sought to intervene in this action (Court File No. 116, Ex. 2).

Defendants, on the record, are largely correct. The Jewel Plaintiffs attempted to go it alone, and only after their attempt at class certification was rejected did they attempt to intervene in this action. Having chosen to litigate their class action in Massachusetts they must accept the consequences of that decision. The Jewel Plaintiffs are plainly attempting to intervene in this matter because of the class nature of the litigation. As the Court has denied Plaintiff's motion for class certification, the Jewel Plaintiffs' arguments have little force.[5] And the Court, therefore, will **DENY** the Jewel Plaintiffs' motion to intervene (Court File Nos. 92, 112).

## VI. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment and dismiss Plaintiff's claims for negligent misrepresentation and fraudulent inducement.

In addition, it appears all pre-trial matters are complete. The Court will therefore **ORDER** the parties to show cause why these cases should not be transferred back to the Districts in which they were filed pursuant to 28 U.S.C. § 1407(a) within **10 days**, excluding weekends and holidays.

An Order shall enter.

                                **/s/**

---

[5] Indeed as the Court earlier noted, the Jewel Plaintiff's may have intended to all withdraw their motion to intervene. The Court nonetheless addresses the motion so that all pretrial matters that appear pending on the docket are addressed.

**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**